IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Addy's Harbor Dodge, | ) | Civil Action No.: 4:11-cv-1065-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Global Vehicles U.S.A. Incorporated, | ) | |
| John A. Perez, and Manuel Baez, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action arises from a contractual dispute between Plaintiff Addy's Harbor Dodge ("Plaintiff" or "Addy's") and Defendant Global Vehicles U.S.A., Inc. ("Global"). In addition to Global, Plaintiff also sued Global's former Chief Executive Officer, John A. Perez ("Perez"), and Global's former Chairman of the Board of Directors, Manuel Baez ("Baez"). The action was brought in state court but was removed to this Court by all Defendants on May 3, 2011.

Presently before the Court are the renewed Motions to Dismiss of Defendant Baez, *see* ECF No. 82, and Defendant Perez, *see* ECF No. 89.[1]  The matter is now before the Court after the issuance

---

[1] Defendants Baez and Perez filed their initial motion to dismiss on June 22, 2011.  *See* Motion, ECF No. 15.  This motion was filed jointly, as both Baez and Perez were represented by the same counsel at the time.  The Court denied this motion without prejudice to Baez and Perez's right to refile.  *See* Order, ECF No. 23.  Baez and Perez first renewed their motion on June 18, 2012.  *See* Motion, ECF No. 43.  On January 2, 2013, the Court granted the motion as "unopposed."  *See* ECF No. 48.  On January 11, 2013, Plaintiff requested the Court reconsider this ruling.  *See* ECF No. 52.  The Court granted the motion to reconsider on May 13, 2013, vacating its prior order and finding that Plaintiff's prior filings should have been considered in ruling on the motion, *see* ECF No. 62, as the Court had indicated in its Order on the original motion that "no further response or reply will be necessary by counsel on the Defendants' Motion to Dismiss," *see* ECF No. 23 at 3.  The Court again denied the Motion to Dismiss without prejudice to Defendants' right to refile in order to give the parties an opportunity to conduct jurisdictional discovery.  *See* ECF No. 62 at 7.  Defense counsel was subsequently relieved from representing Perez, but continued to represent Global and Baez jointly.  *See* ECF No. 68.  Baez and Perez again renewed their motions, with Baez represented by counsel and Perez proceeding *pro se*, after the jurisdictional discovery period ended.

of the Report and Recommendation of United States Magistrate Judge Kaymani D. West.[2]  In the R & R, the Magistrate Judge recommends that the Court grant the renewed motions to dismiss of Baez and Perez, and find that the Court lacks personal jurisdiction over them.  *See* R & R, ECF No. 97 at 22.

For the following reasons, the Court adopts the Magistrate Judge's Report and Recommendation, and grants the renewed motions to dismiss of Baez and Perez.

### STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the district court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the district court.  *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The district court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed.  *Id.*  However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The Court reviews only for clear error in the absence of

---

[2] When this matter was removed to this Court in May of 2011, all Defendants were represented by the same counsel.  However, as previously noted, Perez is now proceeding *pro se*.  Accordingly, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to the Magistrate Judge for pretrial handling.

a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### FACTUAL BACKGROUND

The facts of this case, including citations to the record, were completely and accurately set forth in the Magistrate Judge's Report and Recommendation. *See* ECF No. 97 at 2–5. Briefly stated, Plaintiff's complaint alleges causes of action against Defendant Global for: (1) Violation of Regulation of Manufacturers, Distributors and Dealers Act ("RMDDA") (S.C. Code Ann. § 56–15–10); (2) Breach of Contract Accompanied by a Fraudulent Act; and (3) Corporate Veil Piercing. Addy's also alleges causes of action against Defendants Baez and Perez for: (1) Violation of the RMDDA; and (2) Corporate Veil Piercing. Baez and Perez assert that the Court lacks personal jurisdiction over them, and thus dismissal is warranted under Rule 12(b)(2) of the Federal Rules of Civil Procedure ("FRCP").

### DISCUSSION

**I.    Personal Jurisdiction Standard**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when the Court "decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404 (D.S.C. 2012) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)) (internal quotation marks omitted). "In deciding whether a plaintiff has proven a prima facie case of personal jurisdiction, a court may consider all

3

parties' pleadings, affidavits, and other supporting documents presented to the court." *Id.* at 404 (quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99–2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000); *Mylan Labs.*, 2 F.3d at 62; *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)) (internal quotation marks omitted). Upon such review, the Court is required to "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.[3] Plaintiff must base his claim that personal jurisdiction exists on "specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). As the Fourth Circuit Court of Appeals explained in *Mylan Labs., Inc. v. Akzo, N.V.*, the court is to draw all "reasonable" inferences in favor of the plaintiff and is to look to the proof proffered by all parties in considering a Rule 12(b)(2) motion. 2 F.3d 56, 62 (4th Cir. 1993). Nonetheless, the court "need not 'credit conclusory allegations or draw farfetched inferences.'" *Sonoco Prods.*, 877 F. Supp. 2d at 405 (quoting *Masselli & Lane, PC*, 2000 WL 691100, at *1).

## II.     Basic Principles of Personal Jurisdiction

The Court must first consider whether South Carolina law would authorize jurisdiction over Baez and/or Perez. If South Carolina law would permit jurisdiction, the Court must decide whether exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). South Carolina's longarm

---

[3] A court's threshold finding that plaintiff has established a *prima facie* case of personal jurisdiction over a moving defendant does not settle that issue with finality, though. Rather, "plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington*, 416 F.3d at 294 n.5 (quoting *Prod. Group Int'l v. Goldman*, 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004)) (internal quotation marks and citation omitted).

4

statute, S.C. Code Ann. § 36-2-803, has been interpreted to reach the outer bounds permitted by the Due Process Clause. *See S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130 (S.C. 1992). Accordingly, the Court's inquiry is whether the activities of Baez and Perez were such that the Court's exercise of jurisdiction over them in this matter would comport with due process. *See Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996). To determine whether personal jurisdiction exists, the Court must consider the facts in the light most favorable to Plaintiff. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

A court's exercise of jurisdiction over a nonresident defendant comports with due process when the defendant has sufficient "'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). The Court's inquiry into whether personal jurisdiction is present varies "depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Id.* In such a case, the Court will determine whether it has "specific" jurisdiction over the defendant by considering the following: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391–92 (4th Cir. 2012) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)) (internal quotation marks omitted). In certain circumstances, South Carolina's long-arm statute will permit personal jurisdiction over individual defendants based on actions of an individual nonresident employee, officer, or director of a corporation. *See Magic*

*Toyota*, 784 F. Supp. at 314–15 (citing *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir. 1983)).

Absent such "specific jurisdiction," the Court may consider whether it has "general jurisdiction" over the nonresident. General jurisdiction exists when a defendant's contacts with the state are not the basis for the suit, but the defendant's contacts with the state nevertheless afford jurisdiction because they are "general [and] more persistent." *Carefirst*, 334 F.3d at 397. A court may assert general jurisdiction over a defendant when his "affiliations with the State are so 'continuous and systematic' as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011).

### III. Analysis

#### 1. The R & R and Plaintiff's Objections

In the Report and Recommendation, the Magistrate Judge first recommends the Court find that it lacks general jurisdiction over Baez and Perez because they lack continuous and systematic contacts with South Carolina. *See* ECF No. 97 at 6–8. The Magistrate Judge then recommends the Court find that it lacks specific jurisdiction over Baez and Perez on the basis of their individual actions. *See id.* at 8–17. Finally, the Magistrate Judge recommends the Court find that it lacks specific jurisdiction over Baez and Perez via piercing the corporate veil of Global. *See id.* at 18–22. Therefore, the Magistrate Judge recommends that the Court grant the renewed motions to dismiss of Baez and Perez for lack of personal jurisdiction. *See id.* at 22.

Plaintiff timely filed objections to the R & R, asserting two objections. *See* Pl.'s Objections, ECF No. 104. First, Plaintiff argues that the Magistrate Judge improperly determined that Plaintiff did not present sufficient facts to warrant piercing the veil of Global. *See id.* at 1–3. Plaintiff then

6

objects to the Magistrate Judge's determination that Plaintiff failed to show that specific jurisdiction is present over Baez and Perez.  *See id.* at 3.  Defendant replied to these objections, arguing that the Magistrate Judge's recommended findings were proper.  *See* Def. Reply, ECF No. 106.

### 2. General Jurisdiction

Plaintiff did not object to the Magistrate Judge's recommended finding that the Court lacks general jurisdiction over Baez and Perez.  Finding no clear error, the Court adopts the Magistrate Judge's analysis on this issue and finds that general jurisdiction is not present over Baez and Perez.  Accordingly, the question of whether the Court has personal jurisdiction over Baez and Perez will turn on whether there is specific jurisdiction over these defendants.

### 3. Specific Jurisdiction Based on Individual Actions

The specific jurisdiction inquiry "focuses on the 'relationship among the defendant, the forum, and the litigation.'"  *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).  Thus, "to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a *substantial connection* with the forum State."  *Id.* (emphasis added).

As previously noted, the Fourth Circuit employs a three-part test to determine whether exercise of specific jurisdiction over a party comports with due process.  *See ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391–92 (4th Cir. 2012).  With regard to the first prong, purposeful availment, the Fourth Circuit has explained that "[a] defendant's actions that are directed at the forum state in only 'a random, fortuitous, or attenuated way' are insufficient to support jurisdiction."  *Id.* (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).  Moreover, with regard to the second prong, the arising out of analysis, the Supreme Court has held that the

relationship "must arise out of contacts that the 'defendant *himself*'' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Additionally, the "'minimum contacts' analysis looks to the defendant's contact with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Finally, for the third prong, the constitutional reasonableness analysis, the Fourth Circuit has explained that this "protects a party from 'litigation so gravely difficult and inconvenient that [the] party unfairly is at a severe disadvantage in comparison to [its] opponent.'" *Zurich Ins.*, 685 F.3d at 392 (quoting *Burger King*, 471 U.S. at 478) (internal quotation marks omitted). "To defeat jurisdiction on this basis, a defendant must establish, despite the presence of minimum contacts, 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

As the R & R detailed, Plaintiff asserts related, but distinct, theories in support of its specific jurisdiction argument. First, Plaintiff argues that specific jurisdiction is present over Baez and Perez personally based on their relationship with Global and their involvement in the actions set forth in the complaint. *See* ECF No. 97 at 9. Plaintiff also argues, however, that Global's corporate veil should be pierced and any contacts Global has with South Carolina should be imputed to Baez and Perez. *See id.* The Court will address Baez and Perez's individual contacts first, then turn to whether the corporate veil should be pierced.

The Magistrate Judge found that the evidence presented did not establish that Baez or Perez could have reasonably anticipated being haled into court in South Carolina. *Id.* at 17. The Magistrate Judge analyzed in depth whether Baez and Perez's actions were sufficient to establish personal jurisdiction over either of them, concluding that specific jurisdiction was not present. *See*

8

*id.* at 8–17. Plaintiff objected to this determination, contending that it had proven that Baez and Perez "established a national network of dealers who would be buying parts and vehicles from them," which Plaintiff claims constitutes "purposefully conducting business in South Carolina." *See* ECF No. 104 at 3. Moreover, Plaintiff argues that Baez and Perez were the "guiding spirit" behind Global, which intentionally sold Mahindra dealerships in South Carolina. *See id.* Finally, Plaintiff argues, Baez and Perez executed an agreement "specifically indicating it was their intention to establish a long term relationship in all fifty states." *See id.*

Plaintiff's objections, therefore, all assert that specific jurisdiction exists due to actions taken by Baez and Perez with regard to their positions with Global. In *Columbia Briargate v. First National Bank in Dallas*, the Fourth Circuit analyzed whether corporate officers, employees, or directors could be haled into court for acts they undertook for the benefit of their employer. *See* 713 F.2d 1052, 1059–65 (4th Cir. 1983). The Court arrived at the following rule:

> so long as the agent has not participated in the alleged tort in the forum state, he is immune from suit on such tort both under general corporate law and under the state long-arm statute but *if he has a "direct personal involvement" in a tort committed in the forum state, the agent is subject to jurisdiction in that state* under its long-arm statute.

*Id.* at 1064 (emphasis added). Although the Fourth Circuit did not need reach the issue of whether the individual would be subject to jurisdiction in a forum in which he did not commit the alleged wrong, it quoted the First Circuit favorably, which has held that "[w]hat is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 315 (D.S.C. 1992) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)) (internal quotation marks omitted). The First Circuit has further explained that "[s]uch direct

9

personal involvement typically exists 'where the defendant [agent is] the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity.'" *Id.* (quoting *Escude Cruz*, 619 F.2d at 907). Thus, as the *Magic Toyota* court concluded, "[a]n agent who takes *purposeful and calculated action against a plaintiff* in a particular forum, fully conscious of the consequences of his actions, should be amenable to suit in that forum." *Id.* (emphasis added)

Plaintiff's objections fail to sufficiently establish that Baez and Perez were the "guiding spirits" behind the alleged wrongful conduct. The primary wrong that Plaintiff alleges in the Complaint asserts that Global solicited agreements with dealers to distribute Mahindra vehicles, but knowingly concealed that Mahindra's right to distribute vehicles in the United States was contingent on regulatory approval. *See* Compl., ECF No. 1-1 at ¶¶ 21, 25. Plaintiff seeks to conflate the actions of Global with Baez and Perez in supporting its claims. Plaintiff is correct in asserting that Global intended that it would have long term relationships with dealers in as many states as possible. Perez Dep., ECF No. 91-1 at 82:14–24. Plaintiff is also correct in noting that Baez and Perez were signatories to a contract between Mahindra and Global in which Mahindra designated Global as a distributor. *See* Distributorship Agreement Excerpt, ECF No. 91-2 at 1–2. However, these facts alone do not establish the sort of "purposeful availment" that would cause Baez or Perez to personally anticipate being haled into court in South Carolina. These documents demonstrate the intent of Baez and Perez to sell as many Mahindra dealerships as possible. However, the evidence presented does not establish that Baez or Perez *personally* directed any of the alleged tortious activity at South Carolina through their involvement with Global. The evidence in the record does not indicate that either Baez or Perez was personally involved with Addy's in any way, and both averred that they did not participate in the negotiation or execution of the contract between Global and Addy's. *See* Baez

Aff., ECF No. 82-1 at ¶ 13; Perez Dep., ECF No. 89-1 at 76:10–16. In fact, Plaintiff has presented no evidence that Baez or Perez was personally involved in any of Global's dealings with South Carolina. Defendants, however, both provided evidence denying that they have ever conducted any business in South Carolina. *See* ECF No. 82-1 at ¶ 10–11; Perez Aff., ECF No. 15-5 at ¶ 7–8.

Baez asserts that he never communicated with any representative of Plaintiff until this litigation, and did not direct or manage any Global employees that had any dealings with Addy's. *See* ECF No. 82-1 at ¶¶ 14–15. Moreover, although he was Chairman of the Board, Baez was not an officer of Global and "was never involved in the day to day operations." *See id.* at ¶ 16. Perez, on the other hand, was the CEO of Global, but he did not run Global on a day-to-day basis; rather, the management team did. *See* ECF No. 89-1 at 55:9–11. Plaintiff correctly notes that Perez did sign several letters to Plaintiff, as well as to other South Carolina dealers, on behalf of Global to update them on arbitration with Mahindra. *See* Perez Dep., ECF No. 95-1 at 99:20–101:14, 102:10–103:6. Plaintiff does not allege, however, that either Baez or Perez was directly involved with the purported tortious activity in South Carolina: selling a Mahindra dealership to Addy's while concealing that Mahindra had not received regulatory approval to sell vehicles in the United States.

Global's primary dealings with South Carolina appear to have been related to the activities of an employee, Mike Huey, who was hired to sell Mahindra dealerships throughout the southeast, including in South Carolina. *See* Huey Dep., ECF No. 95-3, at 12:23–25, 29:1–11. Plaintiff argues that by sending Huey into South Carolina to sell dealerships, Baez and Perez were attempting to shield themselves from personal liability. *See* Pl.'s Resp. to Baez Mot. to Dismiss, ECF No. 91 at 8–9; Pl.'s Resp. to Perez Mot. to Dismiss, ECF No. 95 at 9. The Court agrees with the Magistrate Judge, however, that Plaintiff has not presented sufficient evidence to demonstrate that either Baez or

11

Perez directed, or was the "guiding spirit," behind Huey's, or whoever dealt with Addy's, activities in South Carolina. First, none of the evidence in the record indicates that Baez or Perez directed Huey's activities. Moreover, even if they had, Huey was not even involved in the selling of a Mahindra dealership to Addy's. He testified that he was not involved in having Addy's sign a dealer agreement with Global, and that he did not meet anyone with the Plaintiff Addy until after this litigation began. Huey Dep., ECF No. 93-2 at 32:7–24. The agreement between Global and Addy's was ultimately executed on behalf of Global by Ann Durham, the president of Global. *See* Agreement, ECF No. 82-3 at 6. Plaintiff has presented no evidence demonstrating that Baez or Perez had any direct, personal involvement or interaction with the sales representative who sold the Mahindra dealership to Addy's on behalf of Global. Neither Baez nor Perez gave any direction to the sales representatives like Huey. *See* ECF No. 93-2 at 40:17–24; Perez Dep., ECF No. 89-1 at 92:10–19.

The Court agrees with the Magistrate Judge that there simply is not enough evidence to establish to establish that there was any "direct, personal involvement" by Baez or Perez as a corporate agent "in some decision or action which is causally related to the plaintiff's injury," or that they were "'the guiding spirit[s] behind the wrongful conduct, or the central figure[s] in the challenged corporate activity.'" *Magic Toyota, Inc.*, 784 F. Supp. at 315 (quoting *Escude Cruz*, 619 F.2d at 907). Accordingly, the Court lacks specific jurisdiction over them solely based on their individual actions.[4]

---

[4] The Court notes that Plaintiff did not depose Baez during the jurisdictional discovery period, and explore any potential connection he may have had with South Carolina, or Baez's degree of involvement in the sale of the Mahindra dealerships, particularly the Addy's dealership. This only

### 4. Specific Jurisdiction Via Piercing Global's Corporate Veil

Plaintiff's devotes much of its objections to its argument that Global's corporate veil should be pierced, and Global's contacts in South Carolina imputed to Baez and Perez as a result. The Fourth Circuit has held that it is appropriate to exercise personal jurisdiction over a defendant that would not otherwise be subject to it where the individual is an alter ego of a corporation that would be subject to personal jurisdiction in that court. *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 n.18 (5th Cir. 2002)). As the Magistrate Judge correctly explained, because Global is incorporated in Nevada, Nevada law concerning piercing the corporate veil is applicable. *See, e.g.*, *Montague v. Dixie Nat'l Life Ins. Co.*, No. 3:09-cv-687-JFA, 2010 WL 753342, at *2 (D.S.C. Feb. 26, 2010) (citing *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1376 n.11 (Fed. Cir. 1999)) (applying substantive veil-piercing law of the state of corporate defendant's incorporation). Under Nevada law, "a stockholder, director, or officer is not liable . . . unless the corporation is influenced and governed by the individual, the corporation and the individual are inseparable from each other through unity of interest and ownership, *and* adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice." *Webb v. Schull*, 270 P.3d 1266, 1271 (Nev. 2012) (emphasis added).

The Magistrate Judge recommended the Court decline to pierce Global's corporate veil for jurisdictional purposes, reasoning that Plaintiff had not presented sufficient evidence to meet the criteria under Nevada law for veil piercing. *See* ECF No. 97 at 18–22. The Magistrate Judge

---

bolsters the Court's finding that Plaintiff presented insufficient evidence to show that personal jurisdiction is present over Baez.

examined the evidence presented in depth, and determined that neither Baez nor Perez were "alter egos" of Global. *See id.* Plaintiff objected to this determination, arguing that adherence to the corporate fiction in this situation would sanction fraud or promote manifest injustice, and thus piercing the veil is warranted. *See* ECF No. 104 at 1. Plaintiff argues that Defendants generated approximately $40,000,000 in franchise fees nationally but never provided a single Mahindra vehicle. *See id.* at 2. Plaintiff also asserts that Mahindra offered the Global principals their "investment back," and the dealers the benefit of their bargains, but the Defendants rejected this offer and now the dealers have no recourse. *Id.* Plaintiff then alleges that two other predecessor corporations that Baez and Perez were involved in became Global, and that there were issues involved with those companies as well. *Id.* Plaintiff argues that Global was so controlled and influenced by Baez that Mahindra required him to be named Chairman of the Board of Global, and reiterates that both Defendants signed the initial agreement with Mahindra on behalf of Global, which was primarily negotiated by Baez. *Id.* at 2–3. Plaintiff argues that this demonstrates they were "guiding spirits." *Id.* Finally, Plaintiff asserts the Magistrate Judge improperly disregarded a number of factors that favor veil piercing, including gross undercapitalization of the business. *Id.* at 3. Plaintiff argues that projections indicated $30,000,000 would be needed to fund the corporation, but that it only had $5,000,000 on hand. *See id.*

Plaintiff's objections, therefore, provided a litany of arguments why Global's veil should be pierced. The Court reiterates the *Nevada* test is applicable to this situation, and finds the Magistrate Judge properly examined the applicable elements. As previously noted, Nevada law provides as follows: "a stockholder, director, or officer is not liable . . . unless the corporation is influenced and governed by the individual, the corporation and the individual are inseparable from each other

through unity of interest and ownership, *and* adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice." *Webb*, 270 P.3d at 1271 (emphasis added). As Baez correctly noted, all three of these factors must be present in order for veil piercing to be appropriate.

The Court's prior discussion in Part III.3 examined the degree of control that Baez and Perez asserted over Global. Both individuals appear to have exerted some degree of influence and governance over the corporation based on their positions. Perez was the CEO and Baez was Chairman of the Board. *See* ECF No. 82-1 at ¶ 16; ECF No. 89-1 at 55:9–11. The Court does note, however, that Global's day to day operations were controlled by a management committee rather than by either of these Defendants. ECF No. 89-1 at 55:9–11. Nevertheless, even assuming they had influence and some control, the other evidence weighs against piercing the corporate veil under Nevada law.

With regard to unity of interest and ownership, individually neither Baez nor Perez is sufficiently dominant such that his interests are "inseparable" with Global. *See LFC Mktg. Grp. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000) (noting that piercing the corporate veil "may be available to the plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual"). Baez is not a direct shareholder of Global. *See* ECF No. 82-1 at ¶ 4. Instead, he owns Jedami Motorworks, LLC, which itself owns 40% of Global. *Id.* Jedami, however, received no payments from Global, in the form of dividends or otherwise, after the date specified in the agreement with Addy's. *Id.* at ¶ 17. The only money Baez personally received from Global was a $1000 per meeting stipend for attending Global's semi-annual board meetings. *Id.* at ¶ 18. During the course of his involvement with Global, the total payments he received for his

services were only around $12,000.  *Id.* at ¶ 18.  Neither his personal records nor those of Jedami were ever comingled with Global, and at all times the operations of Global were separate from his personal business and Jedami.  *Id.* at ¶¶ 19–20.  Perez, on the other hand, only owned around 18% of Global's stock "the last time he checked," which was in 2011.  *See* ECF No. 89-1 at 13:22–25.  Perez did earn a salary of $220,000 from Global while it was selling Mahindra dealerships.  *Id.* at 54:9–14.  However, his compensation, and that of other officers, was approved by the Board of Directors.  *Id.* at 58:2–12.  Perez did not receive any compensation by virtue of his ownership interest, as Global did not pay dividends to its investors or shareholders.  *See id.* at 58:13–15.

Based on this evidence, the Court cannot say that Global and either Baez or Perez were "inseparable from each other through unity of interest and ownership."  *Webb*, 270 P.3d 1271.  As the *Webb* court explained, an alter ego must "control" the corporation.  *Id.*  Although Baez and Perez may have had some influence and power within Global, the evidence presented establishes that they were not "inseparable" through unity of ownership.  Therefore, the second element weighs against piercing Global's corporate veil.

As to the third element, the Court also agrees with the Magistrate Judge that the available evidence does not establish that "adherence to the corporate fiction [of Global] as a separate entity would sanction fraud or manifest injustice."  *See* ECF No. 97 at 21–22.  For example, although Plaintiff argues that Global misappropriated funds, an IRS audit did not reveal any accounting irregularities with Global.  *See* Perez Dep., ECF No. 93-3 at 84:18–24.  Moreover, in the end, the owners of Global purportedly lost all of their money when Mahindra was unable to perform and

deliver vehicles.[5]  Perez Dep., 59–60, 129–30.  Plaintiff did put forth some evidence of potentially suspect business practices by *Global*.  However, the Court finds that Plaintiff has not presented sufficient evidence to demonstrate that either Baez or Perez was the driving force behind the suspect practices as to Addy's, such that adherence to the corporate fiction of Global as a separate entity apart from Baez and Perez would sanction fraud or manifest injustice.   Thus, the third element also weighs against piercing Global's corporate veil.  In any event, even if, as argued by Plaintiff, there was manifest injustice simply by way of the monetary losses, Nevada law provides that all three criteria must be present for veil piercing to be appropriate.  *See Webb*, 270 P.3d at 1271.  As previously noted, the Court finds that Baez and Perez were not inseparable from Global due to unity of interest and ownership.

Therefore, the Court finds that piercing Global's corporate veil is not appropriate, as Plaintiff has not presented sufficient evidence of a *prima facie* showing for personal jurisdiction purposes.  Accordingly, personal jurisdiction is not present over Baez or Perez based on this theory.

## CONCLUSION

The Court has thoroughly reviewed the entire record, including the pleadings, Defendant Baez's renewed motion to dismiss, Defendant Perez's renewed motion to dismiss, Plaintiff's responses to both motions, Defendant Baez's reply, the R & R, Plaintiff's objections to the R & R, Defendant Baez's response to the objections, and the applicable law.  For the reasons stated above, the Court finds that personal jurisdiction is lacking over both Defendant Baez and Defendant Perez.

---

[5] In his deposition, Perez specifically stated that he put "everything [he] had" into Global, amounting to "$1.1 million."  ECF No. 89-1 at 59:4–6.  Ultimately, he testified, he lost all of this money and "wrote it off."  *Id.* at 59:25–60:11.  Perez also stated that he believes Baez also lost everything he put into Global.  *See id.* at 60:4–11.  Jedami, as noted earlier, received no payment from Global after the date specified in the agreement with Addy's.  *See* ECF No. 82-1 at ¶ 17.

**IT IS THEREFORE ORDERED** that Defendant Baez's renewed motion to dismiss, ECF No. 82, is **GRANTED**.  **IT IS FURTHER ORDERED** that Defendant Perez's renewed motion to dismiss, ECF No. 89, is also **GRANTED**.   Defendant Baez and Defendant Perez are **DISMISSED**, *without prejudice*.   The parties should submit a proposed consent amended scheduling order consistent with this case being subject to trial during the Court's July 2014 term, with jury selection on July 31, 2014.

**IT IS SO ORDERED.**

                                               s/ R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Judge

Florence, South Carolina
May 5, 2014